## AFFIDAVIT

I, Brandon S. Harris, Special Agent (SA) with the Drug Enforcement Administration being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.	I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search 3572 Bold Bidder Dr., Lexington, KY (the "PREMISES"), as further described in Attachment B, for evidence of narcotics trafficking involving Keita HAYDEN and others, including for evidence, instrumentalities and/or proceeds of: (1) conspiracy to distribute, and possess with intent to distribute, controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) possession with intent to distribute, and distribution of, controlled substances, in violation of 21 U.S.C. §841(a)(1), and (3) distribution of controlled substances 21 U.S.C. §§ 841(a)(1), as further described Attachment A.

2.	I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

a.	I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been since February 2020. I am currently assigned to the DEA Lexington Kentucky Resident Office, specifically assigned to investigate federal drug offenses. I am a law enforcement officer of the United States who is empowered to conduct investigations of, and make arrests for, narcotic offenses enumerated in Title 21, United States Code, et. seq., and other duties as imposed by law. I have successfully completed the DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug crimes including, but not limited to 21 U.S.C. §§ 841, 846, 959, and 18 U.S.C. §§ 2, 1956, and l 957. This training focused on methods of unlawful drug trafficking, the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug

traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug violations.

b. As a DEA Special Agent, I have participated in all aspects of drug investigations, including physical surveillance, installation and monitoring of GPS devices, execution of search warrants, arrests of drug traffickers, and Title-III wiretap investigations. I have participated in the execution of numerous search warrants seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code). These warrants covered the search of locations such as residences of drug traffickers and their coconspirators/associates, drug manufacturing operations, and stash houses used as storage and distribution points for controlled substances. I have also participated in the execution of search warrants for electronic devices and information, such as search warrants for mobile telephones, and GPS tracking devices.

c. By virtue of my involvement in these investigations, I have become familiar with the various means and mechanisms used by drug traffickers to import and distribute controlled substances and to remain at large without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants in which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions. I have also seized telephone books, diaries, invoices, cellular telephones, and correspondence that contained evidence of narcotic trafficking and money laundering violations.

d. I have been involved in interviewing individuals post-arrest, defendants in conjunction with post-arrest proffers, confidential informants, and other individuals with knowledge of illegal drug trafficking. During such interviews and through discussions with other experienced agents, I have become familiar with the day-to-day operations of distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities. This includes information about the packaging and preparation of narcotics, methods in which illicit drugs are smuggled, transported, and distributed, and security measures commonly employed by narcotics traffickers. These security measures include the use of firearms to protect their narcotics-related activities, and the use of cellular telephones, pagers, and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

e. As a result of my participation in these and other activities, I have gained particular knowledge in the use of confidential informants, physical surveillance, consensual recordings, investigative interviews, garbage searches, pole-mounted cameras, and

2

GPS tracking devices. Based on my training and experience, GPS tracking devices aid law enforcement in the investigation and detection of illegal drug trafficking by enabling agents to analyze the suspected trafficker's travel patterns. GPS data can aid law enforcement in identifying co-conspirators as well as stash houses, which are residences where contraband and instrumentalities of drug trafficking, such as firearms and drug paraphernalia, are stored.

f.  In addition to using these and other investigative techniques, I have analyzed information from traditional record sources, such as financial records, utility records, and telephone toll and subscriber records. I have also analyzed nontraditional record sources such as the informal ledgers routinely maintained by narcotics traffickers. These informal ledgers, commonly referred to as pay-owe sheets, list amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources. I have also gained experience in the identification and collection of drug and non-drug evidence, and the analysis and interpretation of recorded conversations obtained by the methods detailed above.

g.  Also, I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by narcotic distributors. I have been the affiant on multiple state and federal search warrants and have testified in court on the subject matter of narcotics on numerous occasions. Additionally, prior to joining DEA, I was employed with the Lexington Police Department located in Lexington, Kentucky for approximately seven years. During my tenure, I served in a patrol capacity as well as in a Specialized Unit called the Community Law Enforcement Action Response ("C.L.E.A.R."). One of my tasks in the C.L.E.A.R. Unit was to focus on street level narcotics investigations.

3.  The information in this affidavit come from my own involvement in this investigation, my training and experience, my review of evidence, documents and other material, and information provided to me by law enforcement, witnesses, and others.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PURPOSE OF THE AFFIDAVIT**

3

4.      This affidavit is submitted in support of an application for a warrant to search the "PREMISES" as described in Attachment B, for evidence of narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846, as described in Attachment A.  Based on the information in this affidavit, there is probable cause to believe that evidence related to these crimes will be located within the PREMISES.

**PROBABLE CAUSE**

5.      In January 2026, members of the DEA Lexington Resident Office (LRO) and the Federal Bureau of Investigation (FBI) Lexington Office began a joint investigation into the drug trafficking activities of Keita HAYDEN and his associates.  Investigators received information from confidential sources that HAYDEN distributes large quantities of cocaine and methamphetamine in Lexington, Kentucky. Affiant is aware that HAYDEN was previously charged in Fayette County Kentucky criminal case 01-CR-00823 for various offenses including Trafficking in Controlled Substance First Degree, Cocaine. On October 15, 2001, HAYDEN pleaded guilty to the amended offense of Possession of Controlled Substance First Degree Cocaine and was sentenced to 5 years in prison probated for 5 years. In 2007, HAYDEN was convicted in United States District Court in Indictment Number 5:06-CR-187-DCR-MAS for the offense of Possession with Intent to Distribute Cocaine Base and was sentenced to 120 months in prison to be followed by 96 months of supervised release. HAYDEN remains on supervised release for that conviction in the Eastern District of Kentucky.

6.      Your affiant has been in contact with Hayden's Federal Probation Officer in reference to telephone number 859-361-2499. The Federal Probation Officer advised that this telephone number was previously utilized by Keita HAYDEN.  The Federal Probation Officer

further detailed that HAYDEN now utilized telephone number 502-600-0356 and provided, for supervision purposes, 3204 Baird Court, Lexington, Kentucky, as his current residence.

7.      Based on information received regarding HAYDEN's continued criminal conduct, investigators began gathering additional intelligence regarding HAYDEN and his known associates.  On February 03, 2026, affiant conducted a spot check of 3204 Baird Court, Apt. B., Lexington, Kentucky, the residence provided by HAYDEN to his supervising officer. Affiant observed a white Chrysler 300 parked on the street near the residence.  The vehicle was bearing Kentucky registration plate T2N789.  A check of a reliable law enforcement database revealed the vehicle to be registered to Keiara D. JACKSON at 3204 Baird Ct., Apt B, Lexington, Kentucky.  Affiant also observed an unknown Ford sedan backed into the driveway near Apt. B.  The same date, affiant also conducted surveillance of the residence located at 3572 Bold Bidder in Lexington (the "Premises").  This address was believed to be associated with Tamara WALKER, who investigators knew to be HAYDEN's paramour.  U.S. Probation Officer Raccuia previously advised affiant that WALKER rented a gray Dodge Durango bearing Kentucky registration plate S1N988.  At that location and parked in the driveway, affiant observed a white Lexus ES 300H bearing North Carolina registration plate RDV4702. The vehicle was registered to Toyota Lease Trust, PO Box 30203, College Station, Texas 77842.  Per a reliable commercial database, this address and vehicle are associated with Tamara WALKER. Additionally, affiant conducted a spot check at 3621 Bold Bidder Drive. This was a residence identified by FBI as being associated with Brittany CORNETT.  Per an FBI confidential source, CORNETT was identified as a courier who makes drug deliveries and picks up drug proceeds on HAYDEN's behalf. Affiant observed a gray Volvo XC60 parked in the driveway.  The vehicle

was observed to have Kentucky registration plate R0P76 and registered to CORNETT at 3621 Bold Bidder Dr., Lexington, Kentucky 40517.

8.      On February 04, 2026, affiant observed a gray Dodge Durango parked in the driveway of 3572 Bold Bidder, Lexington, KY (the "Premises"). The Durango is an Enterprise rental vehicle that bears Kentucky registration plate S1N988.  Affiant also observed a white Lexus sedan parked in the driveway with North Carolina registration plate RDV4702.

9.      On February 05, 2026, investigators observed the same Durango and white Lexus parked in the driveway of the "Premises".  Investigators also observed HAYDEN exit the residence via the front door.  HAYDEN was observed taking the trash can from the side of the residence to the curb.

10.     On February 06, 2026, DEA investigators conducted a trash inspection at the "Premises".  Among the refuse, investigators located mail matter with the name "Tamara Walker".  Investigators also located a curbside food receipt with the following information: KJ PATTERSON, 980-215-2340, Grey Dodge.  In reviewing this information, investigators reasonably believe that "KJ" is Keita Jerrod HAYDEN (full name), "PATTERSON" is an alias associated with Tamara WALKER, and the "Grey Dodge" is the Dodge Durango HAYDEN had been observed operating.

11.     On February 09, 2026, FBI received information from a Confidential Source (CS-1) that HAYDEN's stash house was located on Dale Drive, near the community action building/basketball courts.

12.     On February 10, 2026, affiant located the above-described Dodge Durango parked in the driveway at 3765 Red River Drive., Lexington, Kentucky.  At that time, affiant also

6

observed a white Honda Ridgeline bearing Tennessee registration plate 550WB0 parked on the street in front of that residence. During surveillance of the residence, affiant observed a black male walk down the driveway carrying a black /dark backpack-style bag. The unknown male placed the backpack-style bag in the Ridgeline and departed the area in the vehicle. HAYDEN was also observed carrying a black/dark backpack during that time period. HAYDEN was observed to place his backpack inside the Dodge Durango and depart the residence in that vehicle as well.

13. On February 11, 2026, investigators observed HAYDEN at the residence located at 3765 Red River Drive, Lexington, Kentucky. Investigators observed two separate vehicles arrive at the residence. The driver of the first vehicle arrived, entered the residence, and departed within approximately five minutes. After the second vehicle arrived, the driver entered the residence, was observed conversing with HAYDEN outside the residence, and departed within approximately 21 minutes.

14. On February 12, 2026, DEA investigators observed the Dodge Durango utilized by HAYDEN parked in the driveway of 3765 Red River Drive, Lexington, Kentucky. Investigators also observed a white Mercury Grand Marquis parked on the street near the residence as well. Investigators observed two unknown black males walk from the area of the front door of the residence, down the driveway, and to the Mercury Grand Marquis parked on the street. Both subjects entered the Mercury Grand Marquis and the vehicle departed. Investigators conducted mobile surveillance of the vehicle throughout Lexington, Kentucky to two locations within the city. The front passenger was dropped off at an unknown location on Hill Rise Drive. Investigators maintained surveillance of the vehicle as it continued to Richmond Kentucky.

Members of Kentucky State Police conducted a stop of the vehicle in Richmond, Kentucky and identified that it was being operated by Marcus THOMAS. Investigators located and seized approximately 22.83 grams of cocaine from within the vehicle.  Testing of the substance by the DEA Laboratory revealed that it had a net weight of 22.83 and was found to contain cocaine, a Schedule II controlled substance.

15.    On February 13, 2026, DEA investigators reviewed a fixed position camera that had been established at 3765 Red River Drive, Lexington, Kentucky.  A white Chrysler 300 associated with HAYDEN was observed parked in the driveway of the residence with HAYDEN coming and going in the vehicle multiple times throughout the day.  HAYDEN and an unknown associate were observed taking/removing what appeared to be bags from the residence on multiple occasions and placed in vehicles that visited the residence.  Additionally, investigators observed a white SUV arrive and park on the street in front of the residence.  A white female driver exited the vehicle, entered the residence, and departed within approximately two minutes. Due to affiant's training and experience, these observations of visits of short duration were consistent with what are typical of drug transactions.  On this day, HAYDEN and an unknown black male were observed entering/exiting the residence with a key.

16.    On February 14, 2026, the fixed position camera captured HAYDEN arrive and enter his suspected "stash house" located at 3765 Red River Drive, Lexington, Kentucky. HAYDEN utilized a key to enter/secure the residence.  The camera further captured multiple vehicles arrive at the residence this date.

17.    On February 15, 2026, the fixed position camera captured the same Honda Ridgeline bearing Tennessee registration plate 550WB0 that was observed on February 10 arrive

8

and park on the street in front of 3765 Red River Drive, Lexington, Kentucky. Investigators observed HAYDEN exit the residence empty handed and approach the Honda Ridgeline. HAYDEN appeared to speak to the operator of the Ridgeline, retrieve a bag, and walk back inside the residence with the Honda Ridgeline then departing.

18.    On February 19, 2026, the fixed position camera captured a white Volkswagen with tinted windows arrive at 3765 Red River Drive, Lexington, Kentucky and park in the driveway.  No occupants were observed exiting the vehicle.  An unknown black male exited the residence carrying a dark duffle bag.  The duffle bag appeared to be heavy by the way it was being carried by the unknown black male.  The black male appeared to place the duffle bag in the rear passenger compartment of the Volkswagen as he returned to the residence not carrying the duffle bag.

19.    On February 27, 2026, investigators observed a white Volkswagen Passat bearing Texas registration plate VZN5410, registered to Del Tanya HOLBROOK, arrive at the "Premises". Investigators observed HAYDEN walk from the front of the residence carrying a large cardboard box and place the box in the trunk of the Volkswagen.  Per a court authorized GPS tracking device affixed to HOLBROOK's vehicle, investigators were aware that the vehicle was regularly traveling between the cities of Louisville, Kentucky to Lexington, Kentucky to residences associated with HAYDEN, including the "Premises" twice.

20.    On March 04, 2026, DEA investigators received information from KSP Trooper J. Gabriel that the Honda Ridgeline bearing Tennessee registration plate 550WB0 had arrived back in Lexington, Kentucky at approximately 12:45 a.m. Investigators were aware through electronic surveillance that this vehicle was consistently observed on the roads in the states of Tennessee

9

and Georgia. Investigators reviewed Flock camera information in association with information gathered from a court authorized GPS tracking device on HAYDEN's white Lexus ES300H bearing NC tag RDV4702. Based on this information, investigators believe that the Lexus and Honda Ridgeline met at or near 1087 Duval Street, Lexington, Kentucky. That same date, investigators with the Tennessee Highway Patrol conducted a traffic stop on the Honda Ridgeline in Coffee County Tennessee. During a search of the vehicle, a black drawstring bag was located in the rear floorboard containing $123,000 U.S. currency. This currency was separated by rubber bands in stacks. Another stack of U.S. currency located in the center console of the vehicle. The packaging and separation of the currency was consistent with the packaging of drug proceeds. Additionally, officers located and seized a vacuum sealer, plastic baggies, a large duffle bag, and multiple cell phones. The driver of the Ridgeline was identified and released.

21. On March 05, 2026, investigators observed a white Volkswagen Passat arrive at the "Premises" and parked on the street in front of the residence again. Investigators did not observe any type of exchange and HAYDEN is not believed to have been present during this stay.

22. On March 06, 2026, FBI advised that CS-1 stated that HAYDEN was currently out of drugs. CS-1 also advised that HAYDEN's brother recently got out of jail and had been taking all the "dope". Investigators monitoring a court authorized tracking device affixed to the Volkswagen Passat bearing Texas registration plate 550WB0 and observed that the vehicle frequents 2415 Mcgee Drive, Louisville, Kentucky. Per a reliable commercial database, this residence is affiliated with Daron HAYDEN. Investigators believe Daron HAYDEN to be Keita

HAYDEN's brother.  Daron HAYDEN also has a criminal history of Trafficking in Controlled Substance Cocaine, as well as other charges.

23.    On March 09, 2026, investigators conducted surveillance on HAYDEN and the white Volkswagen Passat in Lexington, Kentucky.  HOLBROOK met with HAYDEN at the residence located at 1087 Duval Street, Lexington, Kentucky.  HAYDEN was observed retrieving a large cardboard box from inside the Duval Street residence, placing the cardboard box in the trunk of the white Volkswagen Passat, and leaning inside the front passenger seat area of the Volkswagen Passat.  A traffic stop was conducted on the Volkswagen Passat as it traveled west towards Louisville, Kentucky via Interstate 64. During the stop, investigators located and seized approximately 5 kilograms of suspected cocaine and approximately 27.5 lbs. of methamphetamine.  This cache of drugs was located inside the same box that investigators observed HAYDEN place in HOLBROOK's vehicle. HOLBROOK was arrested at the conclusion of the traffic stop on Kentucky state drug trafficking charges.  A presumptive test of the exhibits indicated the presence of Cocaine HCL and Methamphetamine.  The official DEA Lab Report for the suspected methamphetamine identified the substance as methamphetamine hydrochloride, a Schedule II controlled substance, with a net weight of 11,412 grams, i.e., 11.4 kilograms or 25.16 pounds. Further testing proved that the substance was 96% pure, resulting in 10,955 grams of actual methamphetamine. The DEA Laboratory report for the cocaine is still pending.

24.    On March 12, 2026, affiant conducted a spot check of the residence address at 3204 Baird Ct. Apt. B, Lexington, Kentucky and observed the white Lexus bearing North Carolina registration plate RDV4702 parked in the driveway.  HAYDEN departed the residence

and traveled to 1087 Duval Street, Lexington, Kentucky where affiant observed the vehicle park behind the residence.  Investigators did not see HAYDEN take any items into or remove any items from the residence on that day.

25.     On March 20, 2026, the fixed position camera focused on the "Premises" captured HAYDEN exit the residence carrying a small black laptop style bag.  HAYDEN got into the driver's seat of the white Lexus and departed the area.  That same date, at approximately 10:45 a.m., investigators observed HAYDEN meet up with a heavy, light-skinned black male at 3772 Kittiwake Drive, Lexington, Kentucky.  HAYDEN gave the small black bag to the male; seconds later the male entered the residence with the bag. Investigators believed that bag to be big enough to contain at least two kilograms of cocaine.  At approximately 10:48 a.m., HAYDEN departed the area. At approximately 11:00 am, investigators observed a white van, (later determined to bear Kentucky registration plate P9C156) arrive and park on the driveway belonging to the "Premises" residence. A light skinned black male got out from the driver seat empty-handed, knocked on the front of the residence and entered. A check of a reliable law enforcement database revealed plate P9C156 to belong to a 2017 Ford Transit, registered to Tray Hughes at 3772 Kittiwake Drive, Lexington, Kentucky. At approximately 11:01 am, investigators observed that male exit the residence, carrying a large black duffel style bag. He placed the bag into the front passenger compartment of the van, entered the driver's seat, and departed the area in the vehicle.

26.     On March 21, 2026, investigators monitored the electronic surveillance devices associated with Keita HAYDEN and the "Premises" residence.  At approximately 10:08 pm, investigators observed HAYDEN exit the residence empty-handed. HAYDEN got into the driver

12

seat of a Chrysler 300 parked at the residence and departed the area.  At approximately 10:19 pm, GPS tracker information for the vehicle revealed that it arrived at Spearmint Rhino located at 5539 Athens Boonesboro Road, Lexington, Kentucky and parked in the front parking lot. At approximately 10:53 pm, the tracker identified that the Chrysler 300 departed the area. At approximately 11:06 pm, investigators observed the Chrysler 300 arrive at the "Premises" and back into the driveway up against the residence. HAYDEN got out from the driver's seat and walked toward the front door to the residence carrying a duffel style bag. Seconds later, HAYDEN unlocked the front door and entered the residence.

27.    To date, court authorized tracking devices affixed to vehicles utilized by HAYDEN have frequented the "Premises", 3572 Bold Bidder Drive, Lexington, Kentucky, on 432 occasions since February 18, 2026. HAYDEN recently provided a coconspirator with approximately 5 kilograms of cocaine and 25 pounds of methamphetamine, all while on supervised release for a previous drug trafficking conviction. HAYDEN concealed his actual residence from his supervision officer and that is consistent with drug traffickers attempting to obscure locations utilized in furtherance of their criminal activity from members of law enforcement.  Intelligence gathered throughout this investigation has identified that HAYDEN's primary residence is the "Premises", 3572 Bold Bidder Drive, Lexington, Kentucky. Vehicles associated with HAYDEN routinely stay overnight at this residence on daily basis.  HAYDEN is believed to reside with his paramour Tamara WALKER and a small child/baby. HAYDEN is a poly-drug distributor who distributes cocaine and methamphetamine.  Based off my training and experience, and the totality of this investigation as described above, it is reasonable to believe that evidence of drug trafficking exists at this location that HAYDEN has attempted to obfuscate

13

from his supervising officer. Per the mandates of his previous federal conviction, HAYDEN's residence is subject to search by members of law enforcement.  In addition to illegal drugs, items of evidentiary value including drugs proceeds, cutting agents, packaging material, ledgers, electronic devices with evidence of drug trafficking, and firearms may be stored at this residence. Based on my training and experience, Drug Trafficking Organizations (DTO's) often maintain multiple residences near one another for several reasons.  Members of DTO's utilize residences for the purpose of living, conducting drug transactions, stashing narcotics, stashing proceeds from the sales of narcotics, and maintaining caches of firearms. DTO's often do this to make it as difficult for law enforcement to pinpoint their locations, and for rival DTO's or other individuals who may want to do them harm or rob them for their narcotics or proceeds. It has also been my experience that DTO' s often try to get residences close together to make counter surveillance of law enforcement easier, for protection, and to lessen the chance of being stopped by law enforcement when transporting narcotics, proceeds from narcotics sale, or firearms from one location to another. Drug traffickers often also maintain empty or sparsely furnished residences where they keep large quantities of narcotics, proceeds from narcotics sales, or firearms, and only utilize the residence (s) to resupply themselves with narcotics, or to hide proceeds from narcotics sales and firearms used in the narcotics trade. These residences are referred to as "stash houses". It is common for stash houses to remain unoccupied and only visited on an infrequent and as needed basis by drug traffickers as not to draw suspicion from neighbors or law enforcement who may be investigating the dealer, trafficker, and/or drug trafficking organization.  "Trap Houses" are residences that narcotics dealers utilize specifically for the purpose of selling narcotics out of.  Generally, a small quantity of narcotics and proceeds are

14

maintained at these residences for day-to-day narcotics sales. These residences, like stash houses, can be sparsely furnished and often rented or maintained in a third-party person's name so as not to create a connection between the DTO or narcotics traffickers/dealers utilizing the residences.

28.    It is common for convicted felons, drug traffickers, and other individuals involved in the distribution, packaging, and sale of illegal narcotics to maintain control of multiple residences. It is widely known and common in the drug trade, not just in this specific case, for drug traffickers/dealers to maintain multiple locations/residences where they store, package, and sell illegal narcotics from in order to ensure that if one of their residences is raided by law enforcement that they will not lose all of their narcotics or proceeds from the sales. Narcotics dealers often maintain stash houses which are locations where they keep the bulk of their narcotics and/or proceeds from narcotics sales. The dealers will often keep a necessary quantity of narcotics at a separate location, a trap house" where they conduct drug transactions. This is often done to keep the large stash of narcotics and/or proceeds safe from being seized or to prevent other individuals from attempting to rob them. It is my belief that the residence located at 3572 Bold Bidder Dr., Lexington, KY is being used for the purposes of living and storing/stashing narcotics and proceeds from narcotics sales. It is common for narcotics traffickers to keep their drugs and drug proceeds at their residences and/or near their persons. Drug traffickers also are known to carry firearms to protect their drugs and drug proceeds.

29.    Based on the above listed facts and statements, it is my belief that HAYDEN is utilizing the residence at 3572 Bold Bidder Dr., Lexington, KY to store quantities of narcotics, firearms, materials for the processing, packaging and distribution of illegal narcotics, but also

proceeds from the sales of those illegal narcotics. Based on our investigation consisting of surveillance operations, vehicle GPS tracker devices, pole cameras, and the information received from cooperating persons, investigators have found that members of this drug trafficking organization are associated with numerous addresses. SA Harris believes the residence 3572 Bold Bidder Dr., Lexington, KY to be HAYDEN's primary residence.  SA Harris has observed HAYDEN and/or HAYDEN's vehicles at this residence on a daily or near-daily basis, despite his address provided to the USPO as 3204 Baird Court in Lexington.

## CONCLUSION

30.     Based on the above, I believe that there is probable and cause to believe that:

   a.   Keita HAYDEN has engaged in criminal conduct, in the Eastern District of Kentucky, by conspiring to distribute and to possess with the intent to distribute Schedule II controlled substances, and by distributing Schedule II controlled substances, in violation of 21 U.S.C. §§ 841 and 846.

   b.   HAYDEN maintains a residence at the "Premises", located at 3572 Bold Bidder Dr., Lexington, Kentucky. I am aware from my training and experience, that drug traffickers often keep items as listed in Attachment A and other items of contraband at their residences and/or locations they maintain access to, including businesses.

31.     Therefore, I believe there is probable cause to believe that contraband, the fruits of crime, or things otherwise criminally possessed, including controlled substances, drug proceeds, records, ledgers, and other items more specifically set forth in Attachment A, which

relate to the illegal drug activity by HAYDEN, and others will be found and seized upon searching the above listed address.

## REQUEST FOR SEALING

32.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the networking forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Brandon Harris, by EBA

Brandon Harris
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me by reliable electronic means (telephonic) on this date, the 28 of April, 2026.

Signed By:
Edward B. Atkins    EBA
United States Magistrate Judge

17

UNITED STATES MAGISTRATE JUDGE